**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| NESTOR SHUST, On Behalf of Himself and All Others Similarly Situated, | ) ) ) Case No. |
| Plaintiff, | ) ) **CLASS ACTION COMPLAINT** |
| | ) **FOR VIOLATION OF THE** |
| v. | ) **FEDERAL SECURITIES LAWS** |
| | ) |
| AMTRUST FINANCIAL SERVICES, INC., | ) |
| DONALD T. DECARLO, SUSAN C. FISCH, | ) **Judge** |
| ABRAHAM GULKOWITZ, GEORGE | ) |
| KARFUNKEL, LEAH KARFUNKEL, RAUL | ) |
| RIVERA, MARK SEROCK, and BARRY D. | ) |
| ZYSKIND, | ) **JURY DEMAND** |
| | ) **ENDORSED HEREON** |
| Defendants. | ) |
| | ) |
| | ) |

Plaintiff Nestor Shust ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of AmTrust Financial Services, Inc.  ("AmTrust" or the "Company") against AmTrust and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which AmTrust will be taken private by a group of controlling shareholders including AmTrust's Chairman and Chief

Executive Officer ("CEO") Barry D. Zyskind ("Zyskind") and directors George Karfunkel ("G. Karfunkel") and Leah Karfunkel ("L. Karfunkel") (collectively, the "Karfunkel-Zyskind Family"), and private equity funds managed by Stone Point Capital LLC ("Stone Point") (the "Proposed Transaction").

2.     On March 1, 2018, AmTrust issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Evergreen Parent, L.P. ("Parent"), an entity formed by funds managed by Stone Point and the Karfunkel-Zyskind Family, and Parent's wholly owned subsidiary, Evergreen Merger Sub, Inc. ("Merger Sub"), in which Parent will acquire the approximately 45% of the Company's issued and outstanding common shares that the Karfunkel-Zyskind Family and certain of its affiliates and related parties do not presently own or control.  Under the terms of the Merger Agreement, AmTrust common shareholders who are not affiliated with the Karfunkel-Zyskind Family will receive $13.50 in cash for each share of AmTrust common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $2.7 billion.

3.     On May 4, 2018, AmTrust filed a Definitive Proxy Statement on FORM DEFM14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that AmTrust's minority stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) AmTrust's financial projections, including the financial projections relied upon by AmTrust's financial advisor, Deutsche Bank Securities, Inc. ("Deutsche Bank"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Deutsche Bank; and (iii) Deutsche Bank's potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as

AmTrust's minority stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, AmTrust's minority stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of AmTrust common stock.

9.      AmTrust is a Delaware corporation and maintains its operations headquarters at 800 Superior Avenue, Cleveland, Ohio 44114 and its corporate headquarters at 59 Maiden Lane,

42nd Floor, New York, New York 10038.  AmTrust is a multinational insurance holding company.  The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "AFSI."

10.    Defendant Donald T. DeCarlo ("DeCarlo") has been a director of the Company since 2006.

11.    Defendant Susan C. Fisch ("Fisch") has been a director of the Company since 2010.

12.    Defendant Abraham Gulkowitz ("Gulkowitz") has been a director of the Company since 2006.

13.    Defendant G. Karfunkel is one of the Company's founding stockholders and has been a director of the Company since 1998.

14.    Defendant L. Karfunkel has been a director of the Company since 2016.

15.    Defendant Raul Rivera ("Rivera") has been a director of the Company since 2016.

16.    Defendant Mark Serock ("Serock") has been a director of the Company since 2018.

17.    Defendant Zyskind is one of the Company's founding stockholders and has been the Company's CEO and President since 2000, Chairman of the Board since May 2016, and a director of the Company and member of senior management since 1998.

18.    The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.    Stone Point Capital LLC is a financial services-focused private equity firm

based in Greenwich, Connecticut.

20.     Parent is a Delaware limited partnership whose limited partners are Trident Pine Acquisition LP ("Trident Pine"), a Delaware limited partnership, whose limited partners are Trident VII Professionals Fund, L.P., Trident VII, L.P., Trident VII DE Parallel Fund, L.P. and Trident VII Parallel Fund, L.P., each of which are managed by Stone Point, and K-Z Evergreen, LLC, a Delaware limited liability company owned by the Karfunkel-Zyskind Family.

21.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own AmTrust common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of April 5, 2018, there were approximately 196,355,229 shares of AmTrust common stock outstanding. All members of the Class may be identified from records maintained by AmTrust or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

28.     AmTrust is a multinational property and casualty insurance provider specializing in coverage for small to mid-sized businesses.  The Company operates in three segments: (1) Small Commercial Business, (2) Specialty Risk and Extended Warranty, and (3) Specialty Program. The Small Commercial Business segment offers workers' compensation insurance products; and commercial package, and other property and casualty insurance products, such as commercial property, general liability, inland marine, employment practices

liability, commercial automobile, and umbrella coverage to small businesses.  The Specialty Risk and Extended Warranty segment provides custom designed coverages, such as accidental damage plans, mechanical breakdown protection, and payment protection plans in connection with the sale of consumer and commercial goods; and coverage for niche property, casualty, and specialty liability risks comprising general liability, employers' liability, and professional and medical liability.  The Specialty Program segment offers workers' compensation, general liability, commercial auto liability, property coverage, excess and surplus lines programs, and other specialty commercial property and casualty insurance products to small and middle market companies.  The Company also provides reinsurance services primarily for personal and commercial automotive business. AmTrust distributes its policies through third-party brokers, agents, retailers, or administrators.

29.     In February 2017 the Company announced that the filing of its annual report on Form 10-K for the year ended December 31, 2016 (the "2016 10-K") would be delayed.  The Company subsequently announced it would need to restate its earnings dating back to 2014.  In its 2016 10-K filed on April 4, 2017, AmTrust revised its fiscal years 2014, 2015 and previously reported 2016 earnings downward by about $136 million because of accounting errors.  Also in 2017, the Company suffered from adverse loss development trends in its commercial automobile and general liability lines of business in both the Specialty Program and Small Commercial Business segments, in its workers' compensation business in the Small Commercial Business segment and in its medical malpractice business in the Specialty Risk and Extended Warranty segment.

30.     As a result, the Company took measures to strengthen its balance sheet.  In 2017, the Company (i) raised $300.0 million from the Karfunkel-Zyskind Family in a private

placement of common stock; (ii) sold 10,586,000 shares of common stock the Company owned in National General Holdings Corp. ("NGHC") for approximately $211.7 million; (iii) entered into an adverse loss development cover agreement, pursuant to which the counter-party agreed to pay the Company for ultimate net losses paid by the Company in excess of a retention of $5.963 billion subject to an aggregate limit of $1.025 billion; and (iv) one of the Company's subsidiaries agreed to sell its personal lines policy management system that it had developed for NGHC, and related intellectual property, to NGHC for $200.0 million.

**The Sales Process**

31.     In 2017 the Company also began a process to sell its U.S. fee businesses (the "Fee Business").  In connection with the Fee Business sales process, in September 2017, representatives of Stone Point asked defendant Zyskind whether the Karfunkel-Zyskind Family would consider sponsoring a going-private transaction of the Company in partnership with Stone Point.  Following the Company's November 2017 announcement that it had agreed to sell 51% of the Fee Business to affiliates of Madison Dearborn Partners, Stone Point again contacted defendant Zyskind to inquire whether the Karfunkel-Zyskind Family would consider sponsoring a going-private transaction with Stone Point.

32.     At a December 27, 2017 Board meeting, defendant Zyskind sought the Board's approval to permit Stone Point to discuss a potential transaction with the Karfunkel-Zyskind Family.  The next day, the Board formed a special committee (the "Special Committee") and appointed as its members defendants DeCarlo, Fisch, Gulkowitz and Rivera.

33.     On January 9, 2018, the Special Committee determined to retain Deutsche Bank as its financial advisor.

34.     Also on January 9, 2018, Trident Pine and the Karfunkel-Zyskind Family

submitted to the Board an indication of interest to acquire all AmTrust common stock not owned or controlled by the Karfunkel-Zyskind Family at a purchase price of $12.25 per share.

35.     On January 12, 2018, Company management provided to the Special Committee and Deutsche Bank a copy of the Company's financial projections which had been prepared by management in connection with management's annual budgeting process (the "Budget Projections"). The Budget Projections had also previously been delivered to the Board by Company management on December 20, 2017.

36.     On January 24, 2018, Company management provided the Special Committee and representatives of Deutsche Bank with Company management's updated estimates of the future financial performance of the Company (the "Case 1 Projections"), reflecting certain adjustments to the Budget Projections as a result of the Tax Cuts and Jobs Act of 2017, recent transactions involving the Company, and updated estimates of the Company's operating results for the fourth quarter of 2017 and the full year 2017.

37.     Then, on January 31, 2018, Company management provided the Special Committee and representatives of Deutsche Bank with Company management's alternate case of the future financial performance of the Company (the "Case 2 Projections") reflecting alternate estimates for gross written premiums, combined ratio, underwriting profits and operating earnings. The Case 2 Projections reflected a more challenging operating environment as well as the reputational and business pressures faced by the Company, slower growth, more conservative projected underwriting assumptions reflecting recent loss reserve activity and a more conservative balance sheet.

38.     Following discussion and a review of Deutsche Bank's preliminary financial analyses of the Company and the Proposed Transaction utilizing the Case 1 Projections and Case

2 Projections, at a February 7, 2018 Special Committee meeting, the Special Committee authorized Deutsche Bank to deliver a counterproposal of $17.50 per share to Stone Point and the Karfunkel-Zyskind Family.

39.     On February 16, 2018, at the Special Committee's request, Company management informed the Special Committee that the Case 2 Projections represented management's then best current estimates of the future financial performance of the Company. However, following meetings with Company management, the Special Committee disagreed.  At the direction of the Special Committee, Deutsche Bank requested that Company management make certain adjustments to the Case 2 Projections, including an increased rate of gross premium written growth, a lower loss ratio, and higher net investment yield and capital return than in the Case 2 Projections, resulting in higher earnings than in the Case 2 Projections.  Company management thereafter made the various adjustments and provided a revised set of projections to the Special Committee (the "Special Committee Case Projections").

40.     The Special Committee subsequently requested that Company management create an additional set of projections following its February 25, 2018 meeting.  The Special Committee requested an alternate set of "downside" financial projections reflecting Company management's estimates of the negative consequences to the Company if the Company's insurance company subsidiaries' ratings were downgraded (the "Downside Case Projections"). The Downside Case Projections were sent to Deutsche Bank on February 27, 2018.

41.     Also on February 27, 2018, Stone Point and the Karfunkel-Zyskind Family delivered their "best and final" offer of $13.50 per share.

42.     At a Special Committee meeting the next day Deutsche Bank rendered its fairness opinion and the Special Committee voted to approve the Merger Agreement.

10

43.     On March 1, 2018, the parties finalized and executed the Merger Agreement.

**The Proposed Transaction**

44.     Also on March 1, 2018, AmTrust issued a press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

> NEW YORK, March 01, 2018 -- AmTrust Financial Services, Inc. (Nasdaq:AFSI) ("AmTrust" or the "Company") announced today that it has entered into a definitive agreement with Evergreen Parent, L.P., an entity formed by private equity funds managed by Stone Point Capital LLC ("Stone Point"), together with Barry D. Zyskind, Chairman and CEO of AmTrust, George Karfunkel and Leah Karfunkel (collectively, the "Karfunkel-Zyskind Family"), in which Evergreen Parent will acquire the approximately 45% of the Company's issued and outstanding common shares that the Karfunkel-Zyskind Family and certain of its affiliates and related parties do not presently own or control.  The transaction values the fully diluted equity of the Company at approximately $2.7 billion, excluding the Company's outstanding preferred stock.
>
> Under the terms of the proposed merger, AmTrust common shareholders who are not affiliated with the Karfunkel-Zyskind Family (the "Public Shareholders") will receive $13.50 in cash for each share of AmTrust common stock they hold.  This represents a premium of 33% to the Company's unaffected closing common stock price on January 9, 2018, the last trading day before Stone Point and the Karfunkel-Zyskind Family announced their proposal to acquire all of the outstanding common shares of AmTrust that the Karfunkel-Zyskind Family did not already own or control.  The Karfunkel-Zyskind Family and certain of its affiliates and related parties will rollover their shares in the Company for interests in Evergreen Parent.  Each share of the Company's currently outstanding preferred stock will remain outstanding and it is expected that they will continue to be listed on the New York Stock Exchange following the consummation of the transaction.
>
> * * *
>
> Mr. Zyskind, Chairman and CEO of AmTrust, said: "I believe that this transaction represents an exciting step forward for AmTrust, our employees, and the agents, brokers, partners, and customers we serve. As a private enterprise, we will be able to focus on long-term decisions, without the emphasis on short-term results."
>
> Mr. Zyskind continued, "The year 2018 marks the 20th anniversary of AmTrust's founding. Alongside Stone Point Capital, a strong partner widely recognized as an experienced investor in the insurance sector, the Karfunkel-Zyskind family is deeply committed to the long-term strength and success of AmTrustWe are well-

positioned to continue meeting our policyholders' needs, supporting our brokers and agents, and developing our partner relationships."

Jim Carey, Senior Principal of Stone Point Capital, said: "Stone Point is excited to be partnering with the Karfunkel-Zyskind family and AmTrust's management team in the next phase of AmTrust's growth. AmTrust has built its business through an innovative spirit and dedication to their employees, customers and partners. Under Barry Zyskind's leadership, AmTrust will continue to invest in long-term growth initiatives and continue to support their policyholders, agents and brokers."

## The Proxy Statement Contains Material Misstatements and Omissions

45.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to AmTrust's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

46.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) AmTrust's financial projections, including the financial projections relied upon by AmTrust's financial advisor, Deutsche Bank; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Deutsche Bank; and (iii) Deutsche Bank's potential conflicts of interest. Accordingly, AmTrust's minority stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning AmTrust's Financial Projections*

47.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

48.     Throughout the process leading up to the announcement of the Proposed

Transaction, AmTrust's management created sets of financial projections, which purportedly exhibited management's expectations regarding AmTrust's future financial performance.

49.    The Proxy Statement wholly omits the Budget Projections and merely discloses a partial summary set of projections for each of the Special Committee Case Projections, Case 1 Projections, Case 2 Projections, and Downside Case Projections.

50.    The Proxy Statement fails to disclose, however, key financial metrics for each set of projections relied upon and utilized by Deutsche Bank in its financial analysis underlying its fairness opinion.

51.    For example, the Proxy Statement sets forth that, in connection with the *Dividend Discount Analysis* Deutsche Bank performed, Deutsche Bank:

> calculated a range of implied present values of the distributable cash flows that the Company is forecasted to generate.  The range was determined by adding: the present value of an estimated future dividend stream for the Company over a period of forty-eight months from January 1, 2018 to December 31, 2021 based on (a) the Special Committee Case Projections and (b) for reference purposes only, the Case 1 Projections, the Case 2 Projections, and the Downside Case Projections. . . .

Proxy Statement at 47.  Yet, the Proxy Statement fails to disclose the estimated future dividend stream for the Company over a period of forty-eight months from January 1, 2018 to December 31, 2021 for the (i) Special Committee Case Projections, (ii) Case 1 Projections, (iii) Case 2 Projections, and (iv) Downside Case Projections.

52.    The Proxy Statement further fails to disclose the following Company financial metrics that were utilized by Deutsche Bank in performing its financial analyses underlying its fairness opinion: (i) the Company's book value per share ("BVPS") and tangible book value per share ("TBVPS") as of December 31, 2017; (ii) earnings per share ("EPS") and EPS excluding Tecmo over the projection period (2018E-2022E) for each of the Company's projection cases;

13

(iii) dividends per share for the Company over the projection period (2018E-2022E) for each of the Company's projection cases; (iv) the Company's 2018 return on tangible equity ("ROTE"); and (v) the Company's 2018 return on equity ("ROE").

53.     Additionally, the Proxy Statement fails to disclose the Company's TBVPS over the full projection period (2018E-2022E) for each of the Company's projection cases.

54.     The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Deutsche Bank" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Deutsche Bank's Financial Analyses***

55.     The Proxy Statement describes Deutsche Bank's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Deutsche Bank's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, AmTrust's minority stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Deutsche Bank's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to AmTrust's minority stockholders.

56.     With respect to Deutsche Bank's *Analysis of Public Trading Multiples*, the Proxy Statement fails to disclose: (i) the individual P/TBV and P/BV multiples for each of the peer companies analyzed in the regression analysis performed by Deutsche Bank; (ii) the P/TBV regression (implied discount) and P/BV (implied discount) multiple ranges for the peer companies applied to each of the Company's three projection cases in the regression analysis;

(iii) the 2018 ROE and ROTE percentages for the Company for each of the Special Committee Case Projections, Case 1 Projections, and Case 2 Projections; and (iv) the Company's BVPS and TBVPS for December 31, 2017.

57.     With respect to Deutsche Bank's *Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the cost of equity calculation of 12% to 16% used as the discount rate; (ii) the specific Company financial metric used to derive the terminal value; (iii) EPS, EPS excluding Tecmo and dividends per share for the Company over the projection period (2018E-2022E) for each of the Special Committee Case Projections, Case 1 Projections, and Case 2 Projections; (iv) the per share value of the Company's Tecmo stake; and (v) the implied per share value of the Company's contingent litigation asset.

58.     With respect to Deutsche Bank's *Precedent Transactions* analysis, the Proxy Statement fails to disclose each of: (i) the individual P/NTM EPS, P/BV and P/TBV multiples for each of the Workers' Compensation and Property and Casualty Insurance precedent transactions; (ii) the final offer premium to 1-day, 1-week and 1-month for each of the precedent transactions and the 90-day VWAP for each of the precedent transactions; (iii) the Company's BVPS and TBVPS as of December 31, 2017; and (iv) the Company's 2018 estimated NTM EPS for each of the Special Committee Case Projections, Case 1 Projections, and Case 2 Projections.

59.     With respect to Deutsche Bank's *Precedent Minority Squeeze-Out Transactions* analysis, the Proxy Statement fails to disclose: (i) the high, median, average and low 1-week final offer premiums for each of the squeeze-out transactions analyzed; (ii) the 1-day, 1-week and 1-month final offer premiums for each of the squeeze-out transactions analyzed; (iii) the 90-day VWAP for each of the squeeze-out transactions analyzed; and (iv) the stake acquired and

deal size for each of the squeeze-out transactions analyzed.

60.     With respect to Deutsche Bank's *Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the price targets for the Company as of February 26, 2018.

61.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

62.     The omission of this information renders the statements in the "Opinion of Deutsche Bank" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Deutsche Bank's Potential Conflicts of Interest***

63.     Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Deutsche Bank.

64.     The Proxy Statement sets forth that:

Deutsche Bank is an affiliate of Deutsche Bank AG (together with its affiliates, the "DB Group"). One or more members of the DB Group have, from time to time, provided investment banking, commercial banking (including extension of credit) and other financial services to Stone Point, affiliates of which are equity holders of Parent, and its affiliates and portfolio companies for which they have received, and in the future may receive, compensation, including acting as sole bookrunner on a $22 million follow-on offering of shares for Eagle Point Credit Company, Inc., a portfolio company of Stone Point, in May 2016. One or more members of the DB Group have, from time to time, provided commercial banking (including extension of credit) and other financial services to the Company and its affiliates for which they have received, and in the future may receive, compensation, including serving as a counterparty to a Dutch trade finance

facility of National Borge, a subsidiary of the Company, and certain affiliates in December 2017.

Proxy Statement at 42-43.  However, the Proxy Statement fails to disclose the fees received by Deutsche Bank for the services performed for Stone Point and the Company, respectively.

65.     Additionally, the Proxy Statement sets forth that "Deutsche Bank provided the Special Committee with a disclosure letter describing Deutsche Bank's relationships with the Company, Stone Point related funds and their portfolio companies and the Karfunkel-Zyskind Family and its affiliates."  Proxy Statement at 24-25.  The Proxy Statement fails, however, to disclose the services performed by Deutsche Bank on behalf of the Karfunkel-Zyskind Family and its affiliates and the fees received by Deutsche Bank for these services.

66.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

67.     The omission of this information renders the statements in the "Opinion of Deutsche Bank" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

68.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of**

17

the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

69.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

71.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial analyses performed by the Company's financial advisor and the actual intrinsic standalone value of the Company. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

72.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction or seek appraisal. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

73.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

74.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.

Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

75.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76.     The Individual Defendants acted as controlling persons of AmTrust within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of AmTrust and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

79.     In addition, as the Proxy Statement sets forth at length, and as described herein,

the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

80.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, AmTrust's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of AmTrust, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to AmTrust stockholders;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff and the Class;

        D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange

Act, as well as SEC Rule 14a-9 promulgated thereunder;

        E.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

        F.      Granting such other and further relief as this Court may deem just and proper.

DATED: May __, 2018

                      /s/ John C. Camillus
                      John C. Camillus        (0077435)
                      Law Office of John C. Camillus, LLC
                      P.O. Box 141410
                      Columbus, Ohio 43214
                      (614) 558-7254
                      (614) 559-6731 (Facsimile)
                      jcamillus@camilluslaw.com

                      *Counsel for Plaintiff*

OF COUNSEL:

BRAGAR EAGEL & SQUIRE, P.C.
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone:  (212) 308-5858
Facsimile:  (212) 214-0506
Email:  fortunato@bespc.com


WEISSLAW LLP
Richard A. Acocelli (pro hac vice forthcoming)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
racocelli@weisslawllp.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff requests a trial by jury.

/s/ John C. Camillus
John C. Camillus
